IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PEGGY TYNDALL TURBEVILLE,        )
                                 )
            Plaintiff,           )
                                 )
       v.                        )   Civil No. 1:05CV00740
                                 )
STANLY COUNTY ECONOMIC           )
DEVELOPMENT COMMISSION,          )
and STANLY COUNTY, A North       )
Carolina Political Body,         )
                                 )
            Defendants.          )

MEMORANDUM OPINION

BULLOCK, District Judge

Plaintiff Peggy Tyndall Turbeville ("Plaintiff") filed this action on August 25, 2005, alleging unlawful discrimination based on her sex and retaliation by her employers, Stanly County Economic Development Commission and Stanly County ("Defendants"), in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII Claims"). Plaintiff also brings claims under North Carolina law for intentional infliction of emotional distress and wrongful termination. Defendants move to dismiss Plaintiff's Title VII Claims (Plaintiff's First and Second Causes of Action) on the grounds that Plaintiff filed her claims beyond the time limit set by Title VII. For the following reasons, the court will grant Defendants' motion and dismiss those claims. The court will

dismiss the remaining supplemental state law claims sua sponte.

FACTS

Plaintiff was employed by Defendants as an administrative assistant in July or August, 1997. She was later promoted to the position of executive director of the Stanly County Economic Development Commission ("the Commission"). The Commission is apparently related to Stanly County, a municipality organized and existing under the laws of North Carolina. (Compl. ¶¶ 2-3; Answer ¶¶ 2-3.) Defendants are "employers" within the meaning of Title VII and are subject to its prohibitions against discrimination on the basis of sex. (Compl. ¶ 8; Answer ¶ 8.)

Jurisdiction in this court is pursuant to 28 U.S.C. § 1331 and/or § 1343(4) based on the existence of a federal question. Jurisdiction over Plaintiff's state law claims is supplemental pursuant to 28 U.S.C. § 1367(a).

Assuming (without deciding) the facts as alleged by Plaintiff, shortly after Plaintiff was promoted to the position of executive director, the male county manager and other employees "began a campaign of harassment against Plaintiff and began to treat Plaintiff differently from other similarly situated male employees." (Compl. ¶ 11.) Although Plaintiff complained about the harassment, Defendants took "no remedial

action" causing Plaintiff to be subjected to "a hostile work environment that created emotional stress and anguish for Plaintiff." (Compl. ¶¶ 12-14.)

Defendants terminated Plaintiff on September 3, 2003. On October 10, 2003, she filed an EEO charge of discrimination against Defendant Stanly County[1] on the basis of sex under Title VII. (Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Mem.") 1-2 & Ex. A.) The EEOC issued a dismissal and notice of right to sue letter dated November 25, 2003. (Pl.'s Mem. Ex. B.) The letter informed Plaintiff of her right to pursue claims under Title VII in court, stating:

> You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

(Pl.'s Mem. Ex. B.)

Plaintiff has not disclosed the date on which she received the EEO letter, but admits that she did receive it and that she was required to file her lawsuit, if at all, within ninety days

---

[1] The EEO charge did not name the Commission. "Under Title VII . . . a civil action may be brought only 'against the respondent named in the [EEO] charge.'" Causey v. Balog, 162 F.3d 795, 800 (4th Cir. 1998) (citing 42 U.S.C. § 2000e-5(f)(1) (1994)). Accord Lee v. N.C. Dep't of Transp., 2000 WL 33682677, at *4 (E.D.N.C.), aff'd, 230 F.3d 1353 (Table), 2000 WL 1421353 (4th Cir. 2000). If the Commission and Stanly County are separate legal entities, this may be an additional basis on which to dismiss the Title VII Claims against the Commission.

3

of the date of the letter.[2] (Pl.'s Mem. 2 & Ex. B.)  Therefore, in order to protect her right to sue under Title VII, Plaintiff calculates that she was required to file a lawsuit by February 23, 2004.[3]

Plaintiff hired an attorney, Roman C. Pibl, to represent her in the matter on or before January 9, 2004.[4] (Pl.'s Mem. 2 & Ex. C.)  Nevertheless, <u>Plaintiff did not file a lawsuit of any kind in any court until April 15, 2004</u>, approximately 142 days after the EEO letter issued and 52 days after the deadline to file her Title VII Claims expired.  The complaint that Mr. Pibl filed on Plaintiff's behalf at that time was in Stanly County Superior Court and asserted only state law claims; it did not assert Title VII Claims.

---

[2]  Plaintiff was actually allowed ninety days from her <u>receipt</u> of the letter to file a lawsuit.  (Pl.'s Mem. Ex. B.)  <u>See</u> <u>also</u> 42 U.S.C. § 2000e-5(f)(1).  The implications of this discrepancy are discussed in footnote 5.

[3]  Plaintiff mistakenly identified the date on which her Title VII lawsuit was due as February 23, 200<u>5</u>.  (Pl.'s Mem. 2.)  The court assumes this was a typographical error, based on the court's independent calculation and on the citation following the error to Plaintiff's own exhibit, which is a calendar marking the due date as February 23, 200<u>4</u>.  (Pl.'s Mem. Ex. D.)  Even if the due date had been in February 2005, Plaintiff still missed it by waiting until August 2005 to file Title VII Claims.

[4]  Plaintiff mistakenly identified the date by which she retained Mr. Pibl as January 9, 200<u>3</u>.  (Pl.'s Mem. 2.)  Again, this must be a typographical error.  The EEO letter did not issue until November 2003.  Moreover, Plaintiff and Mr. Pibl's engagement letter contract was executed January 9, 200<u>4</u>.  (Pl.'s Mem. Ex. C.)

4

Plaintiff's evidence suggests that Mr. Pibl advised Plaintiff to forego her Title VII Claims in order to retain jurisdiction in the state court, and that Plaintiff agreed. (Pl.'s Mem. Ex. E.) By and through the attorney representing her now, Plaintiff asserts (without offering an affidavit to support her assertion) that Mr. Pibl did not discuss that strategy with her until 5:04 p.m. on February 23, 2004. She does not deny that she consented to waive the Title VII Claims, but argues that the deadline to file had already passed when they spoke, and therefore, her consent was not valid.[5] (Pl.'s Mem. 2-4.)

---

[5] Plaintiff's argument relies on inferences she draws from a copy of Mr. Pibl's telephone conference note, dated "2/23" and time marked "5:04." She provided neither a sworn affidavit concerning that conversation nor any other support for her inferences. Plaintiff's argument assumes more than the note establishes on its face and also contradicts what the note says concerning her consent to waive Title VII claims. For example, Plaintiff assumes that the conversation began at 5:04 p.m. and that it was then too late to have filed Title VII Claims. However, the note is ambiguous as to whether the conversation began or completed at 5:04 and whether it was in the a.m. or p.m. In either case, as discussed in footnote 2 supra, Plaintiff had at least one day beyond February 23, 2004 to file her lawsuit. Moreover, she suggests (without actually asserting) that she did not consent to waive the Title VII Claims, but the note says she did.
    Although it is unclear whether Mr. Pibl gave Plaintiff all of the information pertinent to the decision to pursue only state law claims and whether he gave it in a timely fashion, Plaintiff has not provided enough evidence for the court to accept her conclusion that "this illuminating note indicates an egregious and harmful fraud was committed upon Mrs. Turbeville." (Pl.'s Mem. 3.) See Lee v. N.C. Dep't of Transp., 2000 WL 33682677, at *3 (E.D.N.C.) ("While this court must take the evidence in the light most favorable to plaintiff for purposes of defendants' summary judgment motion, the court need not 'accept unreasonable inferences based on conjecture or speculation.'") (citations

5

Plaintiff hired her current lawyer on or about January 3, 2005. (Pl.'s Mem. 2.) Through new counsel, Plaintiff dismissed the state court complaint on July 12, 2005, and filed the present lawsuit on August 25, 2005, approximately 638 days after the EEO letter issued and 548 days after the deadline to file Title VII Claims expired. In the present case, Plaintiff reasserts her state law claims and, <u>for the first time in a court of law</u>, asserts her Title VII Claims: employment discrimination on the basis of sex (First Cause of Action) and retaliation (Second Cause of Action).[6] The matter is now before the court on Defendants' motion to dismiss Plaintiff's Title VII Claims.

---

omitted), aff'd, 230 F.3d 1353 (Table), 2000 WL 1421353 (4th Cir. 2000). For purposes of the motion now before the court, however, it is not necessary to decide these details.

[6] The complaint does not specify that the retaliation claim is pursuant to Title VII. Defendants assert that it is and Plaintiff does not dispute that characterization. Thus, the court concludes that Plaintiff's Second Cause of Action is brought pursuant to Title VII, specifically 42 U.S.C. § 2000e-3. However, the "retaliation" box was not checked on Plaintiff's EEO charge of discrimination (Pl.'s Mem. Ex. A.), which may mean she failed to exhaust her administrative remedies on that claim. Moreover, to the extent Plaintiff asserts a state law retaliation claim, it is subject to dismissal pursuant to 28 U.S.C. § 1367(c)(3).

6

DISCUSSION

I. <u>Title VII Claims Dismissed</u>

Plaintiff admits she filed her Title VII Claims late. She seeks to avoid the consequences of her 548-day lapse by having this court apply the equitable remedy of tolling. It is the court's duty to strictly uphold the time limitations set forth by Congress and to apply equitable tolling only "sparingly." <u>Irwin v. Dep't of Veterans Affairs</u>, 498 U.S. 89, 96 (1990). "Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." <u>Baldwin County Welcome Ctr. v. Brown</u>, 466 U.S. 147, 152 (1984).

When the facts merit its application, the equitable remedy of tolling is permitted to excuse a plaintiff's failure to comply with the time requirements of Title VII. <u>Irwin</u>, 498 U.S. at 95-96. In the Fourth Circuit, application of equitable tolling is "guarded and infrequent" and is allowed "in two generally distinct kinds of situations": (1) where plaintiffs were prevented from asserting their claims by some wrongful conduct by the defendant, and (2) where "extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." <u>Harris v. Hutchinson</u>, 209 F.3d 325, 330 (4th Cir. 2000)

7

(citations omitted).  Plaintiff here argues that she was essentially duped by her incompetent lawyer to forego her Title VII Claims against her wishes.  Those facts, even if true, do not qualify under either situation.  Choosing to follow the advice of one's lawyer, and later regretting it, is not the kind of "extraordinary circumstances" for which equitable tolling is justified.

Even assuming arguendo that Mr. Pibl's advice to forego the Title VII Claims was negligent and/or that Plaintiff regrets following his advice,[7] that would not excuse Plaintiff's failure to file on time.  The Fourth Circuit and the United States Supreme Court have soundly rejected the argument Plaintiff makes here, stating:

> The attorney's negligence alone caused her appeal to become untimely.  Gayle's argument boils down to a request that we relieve her of her counsel's negligent failure to

---

[7] The court does not here decide whether Mr. Pibl's advice was negligent; the court will not second guess his reasons for not pursuing the Title VII Claims.  When attorney negligence is egregious, courts in other circuits have suggested that equitable tolling might be appropriate, at least to allow a belated EEO filing, such as in a situation when a client has pursued his claim diligently, but is prevented from filing on time by his attorney's mental instability and abandonment.  See Cantrell v. Knoxville Cmty. Dev. Corp., 60 F.3d 1177, 1180 (6th Cir. 1995) (remanding for determination of whether attorney's negligence rose above "garden variety" due to his mental instability, such as to merit equitable tolling).  Other courts have allowed the mental incapacity of the plaintiff him or herself to warrant equitable tolling.  See Moody v. Bayliner Marine Corp., 664 F. Supp. 232, 236 (E.D.N.C. 1987).  Here, however, there is no allegation of abandonment by the lawyer, or mental instability or incapacitation on the part of Plaintiff or her lawyer.

8

observe required procedure.  However, the Supreme Court and
our own case law have already rejected such a distinction
between the conduct of attorneys and their clients.
Indeed, the Supreme Court has held that there is "no merit
to the contention that dismissal of petitioner's claim
because of his counsel's unexcused conduct imposes an
unjust penalty on the client.  Petitioner voluntarily chose
this attorney as his representative in the action, and he
cannot now avoid the consequences of the acts or omissions
of this freely selected agent.  Any other notion would be
wholly inconsistent with our system of representative
litigation, in which each party is deemed bound by the acts
of his lawyer-agent . . . ."  Link v. Wabash R.R. Co., 370
U.S. 626, 633-34, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962).
See also In re Walters, 868 F.2d 665, 668-69 (4th Cir.
1989) (applying Link).

Gayle v. United Parcel Serv., Inc., 401 F.3d 222, 226-27 (4th Cir. 2005).

Having chosen Mr. Pibl to represent her, Plaintiff is bound by his actions and "equity will not disadvantage one party, who is entitled to rely on the mandated appeals procedures, in order to mitigate the negligence of the other party's freely-chosen attorney."  Id. at 227.  Accord Modrowski v. Mote, 322 F.3d 965, 968 (7th Cir. 2003) ("attorney misconduct, whether labeled negligent, grossly negligent, or willful, is attributable to the client"); Yarborough v. Burger King Corp., 406 F. Supp. 2d 605, 608 (M.D.N.C. 2005); Dimetry v. Dep't of U.S. Army, 637 F. Supp. 269, 271 (E.D.N.C. 1985) ("[E]quitable tolling is not appropriate where the failure to timely file was allegedly caused by the plaintiff's reliance on the advice of counsel.").

Permitting questionable strategic decisions to trump

9

statutory time limitations would set dangerous precedents and likely disrupt the efficient administration of justice. This case presents either a difference in opinion about strategy or, at worst, "garden variety" attorney neglect. Neither situation warrants the application of equitable tolling. Irwin, 498 U.S. at 96.

Plaintiff admits that she received the EEO letter, which clearly set forth the ninety-day deadline. "The ninety day notice period itself is clear evidence that Congress intended to require claimants to act expeditiously, without unnecessary delay." Harvey v. City of New Bern Police Dep't, 813 F.2d 652, 654 (4th Cir. 1987). Plaintiff could and should have been diligent in her efforts to ensure her Title VII Claims were filed on time. Baldwin County, 466 U.S. at 151 ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence."); Chao v. Va. Dep't of Transp., 291 F.3d 276, 283 (4th Cir. 2002) ("Equitable tolling is not appropriate . . . 'where the claimant failed to exercise due diligence in preserving his legal rights.'") (citing Irwin, 498 U.S. at 96); Cantrell v. Knoxville Cmty. Dev. Corp., 60 F.3d 1177, 1180 (6th Cir. 1995) ("lack of diligence by a claimant acts to defeat his claim for equitable tolling"). Instead, she chose Mr. Pibl as her lawyer, she apparently procrastinated in discussing with him what claims to file and in what court, and relied on him to

10

safeguard her rights and pursue her claims. As a result, she did not file her Title VII Claims until they were approximately 548 days overdue. She must live with the consequences of her decisions. Although Plaintiff would like a clean slate and another chance under the direction of her new lawyer, the court cannot allow "circumstances of individualized hardship [to] supplant the rules of clearly drafted statutes." Harris, 209 F.3d at 330. Accord Gayle, 401 F.3d at 226. "[I]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980). Equitable tolling is inapplicable here and Plaintiff's Title VII Claims must be dismissed.

II. Supplemental State Law Claims Dismissed

Plaintiff's remaining claims, her Third and Fourth Causes of Action ("Intentional Infliction of Emotional Distress" and "Wrongful Termination"), arise under state law. The court lacks original jurisdiction over those claims. Because all federal claims will be dismissed, the court declines to exercise its supplemental jurisdiction over Plaintiff's state law claims and will dismiss them without prejudice. 28 U.S.C. § 1367(c)(3);

11

United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); Ashby v. Isle of Wight County Sch. Bd., 354 F. Supp. 2d 616, 631-32 (E.D. Va. 2004) (court must raise subject matter jurisdiction issue sua sponte after federal claims are dismissed).

CONCLUSION

For the reasons stated herein, the court will grant Defendants' Motion to Dismiss Plaintiff's First and Second Causes of Action, will decline to exercise supplemental jurisdiction over the remaining state law claims (Plaintiff's Third and Fourth Causes of Action), and all of Plaintiff's claims will be dismissed.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

                                            /s/ Frank W. Bullock, Jr.
                                            United States District Judge

May 30, 2006